Ivy L. Nowinski (State Bar No.: 268564)
Email: inowinski@condonlaw.com
CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030
Facsimile:  (310) 557-1299

- and -

Anthony Battista (*Pro Hac Vice* Application to be Filed)
Email: abattista@condonlaw.com
CONDON & FORSYTH LLP
7 Times Square
New York, New York 10036
Telephone: (212) 490-9100
Facsimile:  (212) 370-4453

Attorneys for Defendant
DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual; ROBERT ROE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT, a German corporation; LUFTHANSA GROUP BUSINESS SERVICES NEW YORK LLC, a Delaware limited liability company; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 3:23-cv-04413-SI <br><br> **NOTICE OF MOTION AND MOTION OF DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND, IN THE ALTERNATIVE, SPECIAL MOTION TO STRIKE STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION PURSUANT TO § 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE** <br><br> Date:       June 26, 2026 <br> Time:      10:00 a.m. <br> Place:     Courtroom 1- 17th Floor |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT that on June 26, 2026, at 10:00 a.m. in the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 1, Seventeenth Floor, defendant Deutsche Lufthansa Aktiengesellschaft (hereinafter

referred to as "Lufthansa"), by and through its attorneys of record, Condon & Forsyth LLP, will move this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

Lufthansa makes this motion on the grounds that Plaintiffs' claims alleged against it arise from an incident that occurred during their "international carriage" with Lufthansa and in the operations of embarking or disembarking. Plaintiffs' claims against Lufthansa are completely preempted by the Montreal Convention and not compensable under its terms. Moreover, there is no treaty jurisdiction, a form of subject matter jurisdiction, over their claims in the United States under Article 33 of the Montreal Convention. This Court has all information needed to determine whether the Plaintiffs' claims are preempted under the Convention based upon the detailed allegations in the First Amended Complaint ("FAC") and the Ninth Circuit's ruling that a portion of Plaintiffs' claims arose during their international carriage with Lufthansa. Even if the Court determines that not all of Plaintiffs' claims are preempted by the Montreal Convention, it must still dismiss those claims that are preempted and over which it has no subject matter jurisdiction.

In the alternative, Lufthansa will and hereby does specially move the Court, pursuant to California Code of Civil Procedure § 425.16 (the anti-SLAPP statute), as applicable in federal court in this diversity case, to strike Plaintiffs' FAC, in whole or in part, on the grounds that the claims arise from Lufthansa's acts in furtherance of the constitutional right of free speech in connection with a public issue and Plaintiff cannot establish a probability of prevailing on the merits. For these same reasons, Plaintiffs' claims must also be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings in this action, and any oral argument presented at the hearing of this motion, if requested by the Court.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

Dated: May 15, 2026                    CONDON & FORSYTH LLP


By: /s. Ivy L. Nowinski
    IVY L. NOWINSKI

    - and -

    ANTHONY BATTISTA
    (*Pro Hac Vice* Application to be Filed)
    Email: abattista@condonlaw.com
    CONDON & FORSYTH LLP
    7 Times Square
    New York, New York 10036
    Telephone: (212) 490-9100
    Facsimile:  (212) 370-4453

    Attorneys for Defendant
    DEUTSCHE LUFTHANSA
    AKTIENGESELLSCHAFT

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................iii-vii

INTRODUCTION ...........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ............................................................2

STATEMENT OF RELEVANT FACTS .....................................................................3

PROCEDURAL HISTORY...........................................................................................5

ARGUMENT..................................................................................................................6

    I.    PLAINTIFFS' CLAIMS AGAINST LUFTHANSA ARE EXCLUSIVELY GOVERNED BY THE MONTREAL CONVENTION AND MUST BE DISMISSED FOR LACK OF TREATY JURISDICTION, A FORM OF SUBJECT MATTER JURISDICTION, UNDER ARTICLE 33 OF THE CONVENTION ........................................................................................6

        A.    The Montreal Convention Applies Here because Plaintiffs' Alleged Claims Arose in the Course of Their "International Carriage" with Lufthansa or In the Operations of Embarking or Disembarking ................6

        B.    The Montreal Convention Preempts Plaintiffs' State Law Causes of Action and Exclusively Governs Plaintiffs' Claims against Lufthansa.......7

        C.    The Court Lacks Treaty Jurisdiction, a Form of Subject Matter Jurisdiction, over Plaintiffs' Claims under Article 33 of the Montreal Convention ..............................................................................8

            1.    Lufthansa Is Domiciled in Germany...............................................9

            2.    Lufthansa's Principal Place of Business Is in Germany ...............10

            3.    Plaintiffs' Contract of Carriage Was Made in Saudi Arabia ........10

            4.    Plaintiffs' Place of Destination under Their Round-Trip Contract of Carriage Was Riyadh, Saudi Arabia ..........................10

            5.    Plaintiffs' Principal and Permanent Residences at the Time of the Incident Were Saudia Arabia ..............................................10

    II.    ALL OF PLAINTIFFS' CLAIMS ALLEGED IN THIS LAWSUIT ARE PREEMPTED BY THE MONTREAL CONVENTION AND NOT COMPENSABLE UNDER ITS LIABILITY FRAMEWORK...........................11

        A.    The Montreal Convention Applies Here because Plaintiffs' Alleged Claims Arose in the Course of Their "International Carriage" with Lufthansa or In the Operations of Embarking or Disembarking ..............11

        B.    The Montreal Convention Bars Recovery for the Type of Injuries Alleged by Plaintiffs in this Lawsuit ........................................................14

III.    IN THE ALTERNATIVE, PLAINTIFFS' CLAIMS ALLEGED AGAINST LUFTHANSA MUST BE STRICKEN UNDER § 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST LUFTHANSA UNDER CALIFORNIA LAW AND CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON THE MERITS ...................................17

A.    The Challenged Statements and Related Conduct Are Protected Speech Made in a Public Forum in Connection with a Public Issue ......................18

B.    Plaintiffs Cannot Establish a Probability of Prevailing on Any of their Claims on the Merits ...................................................................................18

1.    Plaintiffs' Claim for Public Disclosure of Private Facts Fail ........19

2.    Plaintiffs' Claim for Breach of Contract Fails ..............................20

3.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails ..................................................................................22

4.    Plaintiffs Claim for Negligent Infliction of Emotional Distress Fails ..................................................................................22

5.    Plaintiffs' Claim for Loss of Consortium Fails..............................23

CONCLUSION .............................................................................................................24

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aikpitanhi v. Iberia Airlines of Spain*,
553 F. Supp. 2d 872 (E.D. Mich. 2008)............................................................................9, 10

*In re Air Crash at Little Rock Arkansas*, on June 1, 1999,
291 F.3d 503 (8th Cir. 2002) .................................................................................................17

*In re Air Disaster Near Cove Neck, N.Y., on Jan. 25, 1990*,
774 F. Supp. 718 (E.D.N.Y.1991) ...........................................................................................9

*Air France v. Saks*,
470 U.S. 392 (1985)...............................................................................................................14

*Ambe v. Air France S.A.*,
Case No.: 2:17-CV-08719 DDP-Ex, 2018 U.S. Dist. LEXIS 207194
(C.D. Cal. Dec. 7, 2018) ..........................................................................................................8

*Awimer v. Hava*, Case No.: 1:15-cv-69 GEB-GSA, 2015 U.S. Dist. LEXIS 138477
(E.D. Cal. Oct. 9, 2015) ...........................................................................................................8

*Baah v. Virgin Atl. Airways Ltd.*,
473 F. Supp. 2d 591 (S.D.N.Y. 2007)......................................................................................9

*Bloom v. Alaska Airlines*,
36 Fed. Appx. 278 (9th Cir. 2002)...........................................................................................8

*Bobian v. Czech Airlines*,
93 Fed.Appx. 406 (3d Cir. 2004).............................................................................................17

*Burgess v. Superior Court*,
2 Cal. 4th 1064 (1992) .......................................................................................................22, 23

*Carey v. United Airlines*,
255 F.3d 1044 (9th Cir. 2001) ................................................................................................16

*Christensen v. Superior Court*,
54 Cal. 3d 868 (1991) .............................................................................................................23

*Chubb Ins. Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc.*,
634 F.3d 1023 (9th Cir. 2011) ..................................................................................................7

*Cochran v. Cochran*,
65 Cal. App. 4th 488 (1988) ...................................................................................................22

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ................................................................................................. 18

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)................................................................20

*David v. United Airlines, Inc.*,
  Case No.: 2:15-cv-02262-ODW (PJWx), 2016 U.S. Dist. LEXIS 52457
  (C.D. Cal. Apr. 18, 2016)..............................................................................................................8

*Day v. Trans World Airlines, Inc.*,
  393 F. Supp. 217 (S.D.N.Y.1975) ...................................................................................1, 12, 13

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ...................................................................................................... 17

*Eastern Airlines v. Floyd*,
  499 U.S. 530 (1991)........................................................................................................14, 15, 16

*Ehrlich v. Am. Airlines, Inc.*,
  360 F.3d 366 (2d Cir. 2004)........................................................................................................15

*El Al Israel Airlines, Ltd. v. Tseng*,
  525 U.S. 155 (1999)......................................................................................................8, 14, 15, 16

*Fadhliah v. Societe Air France*,
  987 F. Supp. 2d 1057 (C.D. Cal. 2013) ..............................................................................8, 10, 11

*Geiser v. Kuhns*,
  13 Cal. 5th 1238 (2022).............................................................................................................. 18

*Hall v. Apollo Grp., Inc.*,
  2014 WL 4354420 (N.D. Cal. Sept. 2, 2014) ..........................................................................22

*Harris v. Rudin, Richman & Appel*,
  74 Cal. App. 4th 299, 87 Cal. Rptr. 2d 822 (1999)...................................................................21

*Heinemann v. United Cont'l Airlines*,
  No. 2:11-CV-00002-MJP, 2011 WL 2144603 (W.D. Wash. May 31, 2011).........................15

*Hernandez v. Air France*,
  545 F.2d 279 (1st Cir. 1976)......................................................................................................13

*Jacob v. Korean Air Lines Co. Ltd.*,
  606 Fed. Appx. 478 (11th Cir. 2015)........................................................................................17

*King v. Am. Airlines, Inc.*,
  284 F.3d 352 (2d Cir. 2002).......................................................................................................14

*Klos v. Lotnicze*,
  133 F.3d 164 (2d Cir.1997)........................................................................................................10

*Kruger v. United Airlines, Inc.*,
  481 F. Supp. 2d 1005 (N.D. Cal. 2007) .....................................................................................8

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO.: 3:23-cv-04413-SI

iv

*Lathigra v. British Airways PLC*,
    41 F.3d 535 (9th Cir. 1994) .................................................................................................14

*LeFiell Mfg. Co. v. Superior Ct.*,
    55 Cal. 4th 275, 282 P.3d 1242 (2012) .................................................................................23

*Llanes v. Iberia Air Lines of Spain, S.A.*,
    No. 08-21445-CIV-UNGARO, 2008 WL 11417407 (S.D. Fla. June 30, 2008) ......................7

*MacDonald v. Air Canada*,
    439 F.2d 1402 (1st Cir. 1970) ...............................................................................................13

*Maugnie v. Compagnie Nationale Air France*,
    549 F.2d 1256 (9th Cir. 1977) ....................................................................................1, 12, 13

*Miller v. Cont'l Airlines, Inc.*,
    260 F. Supp. 2d 931 (N.D. Cal. 2003) .....................................................................................8

*Molien v. Kaiser Foundation Hospitals*,
    27 Cal. 3d 916, 167 Cal. Rptr. 831, 616 P.2d 813 (1980) .....................................................24

*Narayanan v. British Airways*,
    747 F.3d 1125 (9th Cir. 2014) .............................................................................................7, 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*,
    74 F.4th 66 (2d Cir. 2023) ........................................................................................................9

*Otworth v. Southern Pac. Transportation Co.*,
    166 Cal. App. 3d 452, 212 Cal. Rptr. 743 (1985) .................................................................21

*Paradis v. Ghana Airways Ltd.*,
    348 F. Supp. 2d 106 (S.D.N.Y. 2004) ......................................................................................8

*Porten v. University of San Francisco*,
    64 Cal. App. 3d 825, 134 Cal. Rptr. 839 (1976) ...................................................................19

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) .............................................................................................................23

*Rodriguez v. Bethlehem Steel Corp.*,
    12 Cal. 3d 382 (1974) .............................................................................................................24

*Rosman v. Trans World Airlines, Inc.*,
    34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974) .....................................................15

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ..................................................................................................................6

*Salis v. Ghana Airways*,
    9 A.D.3d 421, 780 N.Y.S.2d 627, 629 (2004) .......................................................................15

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

*Sandoval v. Pali Inst., Inc.*,
   113 Cal. App. 5th 616 (2025) ................................................................................ 18

*Schwartz v. Thiele*,
   242 Cal. App. 2d 799, 51 Cal. Rptr. 767 (1966) .................................................... 19

*Shulman v. Grp. W Prods., Inc.*,
   18 Cal. 4th 200, 955 P.2d 469 (1998) .................................................................... 19

*Singh v. N. Am. Airlines*,
   426 F. Supp. 2d 38 (E.D.N.Y. 2006) .............................................................. 1, 13

*Smith v. Grumman*,
   60 F. Supp. 3d 1051 (N.D. Cal. 2014) ................................................................... 24

*Sopcak v. Northern Mountain Helicopter Serv.*,
   52 F.3d 817 (9th Cir.1995) ..................................................................................... 10

*Swaminathan v. Swiss Air Transp. Co., Ltd.*,
   962 F.2d 387 (5th Cir.1992) ................................................................................... 10

*Terrafranca v. Virgin Atlantic Airways Ltd.*,
   151 F.3d 108 (3d Cir. 1998) ................................................................................... 17

*Timperley v. Chase Collection Service*,
   272 Cal. App. 2d 697, 77 Cal. Rptr. 782 (1969) ................................................... 19

*Turturro v. Continental Airlines*,
   128 F. Supp. 2d 170 (S.D.N.Y. 2001) .................................................................... 17

*Wyler v. Korean Air Lines Co., Ltd.*,
   928 F.2d 1167 (D.C.Cir.1991) ............................................................................... 10

*Wysotski v. Air Canada*,
   No. C 02-04952 CRB, 2006 WL 581093 (N.D. Cal. Mar. 6, 2006) ........................ 8

**Statutes and Treaties**

The Convention for the Unification of Certain Rules for International Carriage by Air, done at
   Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on November 4, 2003),
   reprinted in Treaty Doc. 106-45, 1999 WL 33292734 (2000)
   ("Montreal Convention") ................................................................................ *passim*

The Convention for the Unification of Certain Rules Relating to International Transportation by
   Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted
   in note following* 49 U.S.C. § 40105 (1997) ("Warsaw Convention") ........................... *passim*

28 U.S.C. § 1331 .................................................................................................................. 8

Fed. R. Civ. Proc. 12(b)(1) (West 2026) ...................................................................... 2, 8, 24

FED. R. CIV. PROC. 12(b)(6) (West 2026) .............................................................................. *passim*

CAL. CIV. PROC. CODE § 425.16 (West 2026) ....................................................................... *passim*

CAL. CIV. PROC. CODE § 430.10 (g) (West 2026) .......................................................................21

**Other Authorities**

George N. Tompkins, Jr., Liability Rules Applicable to International Air Transportation as
   Developed by the Courts in the United States 255 (2010).......................................9, 10

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone:  (310) 557-2030

**INTRODUCTION**

This Court does not need any further information beyond the allegations in the FAC and the Ninth Circuit's holding that Plaintiffs' claims arose in the course of their international carriage with Lufthansa to determine that the Montreal Convention applies here, that the Convention completely preempts all claims alleged by Plaintiffs, and that the Convention does not confer subject matter jurisdiction in this Court. The Montreal Convention exists for the very purpose of providing uniformity in claims arising from international carriage by air and to ensure that claims such as those alleged by Plaintiffs in this lawsuit – a blatant attempt to police Saudi Arabian culture and customs by United States legal standards – do not proceed.

There can be no dispute, based upon the extensive allegations in the FAC and the Ninth Circuit's Opinion of October 30, 2025 ("Opinion"), that Plaintiffs were either traveling onboard Lufthansa flights or engaged with Lufthansa personnel in the process of checking in for their international carriage on Lufthansa flights at the time of all conduct alleged in the FAC. The process of checking in itself is considered an operation of embarkation. *Day v. Trans World Airlines, Inc.*, 393 F. Supp. 217, 221 (S.D.N.Y.1975); *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1262 (9th Cir. 1977); *Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 48 (E.D.N.Y. 2006). Accordingly, because Plaintiffs were on Lufthansa flights or in the operations of embarking or disembarking at the time of all allegations in the FAC, Article 17 of the Montreal Convention exclusively governs all of Plaintiffs' claims and does not permit recovery for the type of emotional injuries Plaintiffs allege. Moreover, Article 33 of the Montreal Convention does not confer subject matter jurisdiction in the United States over Plaintiffs' claims. The Court has an independent basis to examine the basis for its subject matter jurisdiction, and to dismiss all claims asserted by Plaintiff over which it lacks jurisdiction.

Even if Plaintiffs' claims against Lufthansa were not completely preempted (and they are), the Court must dismiss the portion of Plaintiffs' claim that are indisputably preempted, including those claims that arose from conduct on Lufthansa flights from Riyadh to Frankfurt and Frankfurt to San Francisco. The Ninth Circuit reversed this Court's dismissal of Plaintiffs' claims for lack of personal jurisdiction, specifically tethering its finding of personal jurisdiction

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

to the fact that all parties were engaged in the performance of a contract for international carriage with Lufthansa at the time the tortious conduct occurred.  This Court is bound by the Ninth Circuit's ruling, and must dismiss Plaintiffs' claims arising during their "international carriage" with Lufthansa.

In the alternative, and to the extent the Court finds that any of Plaintiffs' state-law claims are not preempted by the Montreal Convention, Lufthansa moves to strike any remaining claims pursuant to § 425.16 of the California Code of Civil Procedure, which applies in this diversity case,  because these claims allegedly arise from Lufthansa's protected speech in connection with the same-sex marriage, an issue of public interest. Plaintiffs' lawsuit is a paradigmatic Strategic Lawsuit Against Public Participation intended to chill participation in public discourse. Under California Code of Civil Procedure § 425.16, once Lufthansa shows that the claims arise from protected activity, the burden shifts to Plaintiffs to demonstrate a probability of prevailing on the merits. Plaintiffs cannot meet that burden, as Plaintiffs fail to allege the essential elements of any of the causes of action alleged in the FAC. The Court should grant this motion, strike the challenged claims, and award Lufthansa its fees and costs.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court must dismiss Plaintiffs' FAC pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs' claims against Lufthansa are exclusively governed by the Montreal Convention, and the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims under Article 33 of the Montreal Convention.

2.    Whether the Court must dismiss Plaintiffs' FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs' claims against Lufthansa are exclusively governed by the Montreal Convention, and not compensable under its liability framework.

3.    Whether, in the alternative, Plaintiffs' claims arising from conduct that occurred onboard Lufthansa flights from Riyadh to Frankfurt and Frankfurt to San Francisco must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because they are preempted by the Montreal Convention and the Court lacks subject matter jurisdiction to adjudicate those claims.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone:  (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

4.    If the Court finds that the Montreal Convention does not govern Plaintiffs' claims, or any subset of Plaintiffs' claims, whether Plaintiffs' claims should be stricken pursuant to § 425.16 of the California Code of Civil Procedure (the anti-SLAPP statute) because Plaintiffs' claims arise from a protected activity (free speech on the topic of same-sex marriage) and Plaintiffs cannot demonstrate a probability of success on the merits.

5.    If the Court finds that the Montreal Convention does not govern Plaintiffs' claims, or any subset of Plaintiffs' claims, whether Plaintiffs' claims must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF RELEVANT FACTS

Plaintiff Robert Roe is a Saudi Arabian citizen who, prior to this incident, allegedly lived permanently in Saudi Arabia.  *See* FAC, ¶ 12, 18.  Plaintiff John Doe is a United States citizen allegedly domiciled in California, although Plaintiffs also allege that John Doe has lived in Saudi Arabia since 1989.  *See* FAC, ¶¶ 13, 15, 19, 22.  Plaintiff John Doe is employed in Saudi Arabia. FAC, ¶ 19.

In 2013, plaintiffs Robert Roe and John Doe were married in the State of California, County of San Mateo.  *See* FAC, ¶ 4, 20.  Notwithstanding plaintiff Robert Roe's marriage to John Doe, plaintiff Robert Roe remained a citizen of Saudi Arabia, and not a citizen of the United States.  FAC, ¶ 12.

Plaintiffs allege that same-sex marriage is not recognized in Saudi Arabia.  FAC, ¶ 21. Plaintiffs further allege that in Saudi Arabia, engaging in a homosexual relationship is a capital crime.  *Id.*

Plaintiffs allege that in May 2021, following closures due to the Covid-19 pandemic, the United States opened its borders to international travelers, but required that all foreign citizens entering U.S. borders be an "immediate family member" of a U.S. citizen.  FAC, ¶ 26.

From Saudi Arabia, Plaintiffs booked travel under two separate reservations for round-trip travel on Lufthansa from Saudi Arabia, with intermediate stopping points in Frankfurt and San Francisco.  FAC, ¶ 27.

Plaintiffs allege that after presenting for their travel at the King Khalid International

Airport in Riyadh, while in the process of checking in for their Lufthansa flight, Lufthansa personnel requested Robert Roe, a Saudi citizen, to identify his familial relationship with a U.S. citizen.  FAC, ¶ 29.  Plaintiffs allege that they intentionally did not disclose the fact of their marriage to this employee, and asked to speak to Lufthansa's station manager.  FAC, ¶ 29.  Plaintiffs allege that from this point, until they were allowed to board their flight, they interacted with Iqbal Jamshed, a Pakistani Muslim and Lufthansa's Deputy Station Manager at the King Khalid International Airport.  FAC, ¶ 30.

Roe then asked Jamshed to step aside so that they could have a private conversation and told Jamshed discreetly that he and Doe were married.  FAC, ¶ 31.  Plaintiffs allege that in response, "Jamshed declared, loudly enough so others around could hear, that he could not believe that Roe and Doe—two men, and one a Saudi Arabian citizen—were married."  FAC, ¶ 32.

Doe then allegedly showed Jamshed the Plaintiffs' San Mateo County marriage license.  FAC, ¶ 33.  Plaintiffs allege that "instead of accepting the document as true and allowing Roe and Doe to check in for their flight, Jamshed loudly continued to publicly demean and question Plaintiffs about their relationship solely because they were gay. Jamshed's performative stunt expressed and reflected discriminatory animus and homophobia . . ."  FAC, ¶ 33.

Plaintiffs allege that Jamshed told them that he needed supervisory approval before he could let them check in for their flight.  Plaintiffs allege that Jamshed then spoke in Urdu with another Lufthansa employee regarding Plaintiffs' marital status.  Plaintiffs allege that after these two men were finished talking, "In English, Jamshed, yet again in front of other customers, employees, and passersby, loudly exclaimed, 'So you two men are married?'." FAC, ¶ 35.

Plaintiffs allege that Jamshed then "told Doe and Roe that he needed copies of their passports, Roe's visa, and their marriage certificate so that he could email the documents to Lufthansa's headquarters in Germany."  FAC, ¶ 36.  "Jamshed then took Doe to Lufthansa's primary office in the [King Khalid International Airport] terminal to collect and forward by email copies of Doe's and Roe's passports and marriage certificate."  *Id.*

Plaintiffs allege that "Doe was held in Lufthansa's office while he waited for approval

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

from Lufthansa" for approximately one hour.  FAC, ¶ 38-39.

Plaintiffs allege that "immediately prior to the departure of Doe and Roe's flight, they were allowed to check in and board the flight."  FAC, ¶ 39.

The remainder of Plaintiffs' allegations in the FAC pertain to conduct that allegedly took place onboard Lufthansa flights and during the operations of disembarking.  FAC, ¶ 40-44.

Plaintiffs allege that while on board the first leg of their flight from Riyadh to Frankfurt, they requested the purser and captain to advise the Lufthansa station manager in Riyadh via telex to destroy all copies and electronic copies of their personal information, which was done.  FAC, ¶ 34, Exhibit C.

Plaintiffs allege that during the second leg of their flight from Frankfurt to San Francisco, they were told that all copies of their documents had been destroyed. FAC, ¶ 36, Exhibit D.

Plaintiffs allege that while on board the second leg of their flight from Frankfurt to San Francisco, they requested that a Lufthansa employee meet them at the airport so that they could lodge a complaint.  FAC, ¶ 36.

Plaintiffs allege that a Lufthansa employee met them at the San Francisco airport and advised them that a Lufthansa employee based in New York would call them within an hour to address their complaint.  FAC, ¶ 37.  Plaintiffs allege that they never received that call.  *Id.*

Plaintiffs have alleged causes of action for (1) Public Disclosure of Private Facts; (2) Intentional Infliction of Emotional Distress; (3) Breach of Contract; (4) Negligent Infliction of Emotional Distress; and (5) Loss of Consortium arising from this incident.  FAC, ¶¶ 52-80.

### PROCEDURAL HISTORY

On March 29, 2024, this Court held that it lacked specific personal jurisdiction to adjudicate Plaintiffs' claims against Lufthansa. ECF No. 27.  On October 30, 2025, a two-judge majority of  a three-judge panel of the Ninth Circuit Court of Appeals reversed this Court's Order finding that it could not exercise personal jurisdiction over Lufthansa, over a strong dissent by Judge Milan Smith.  Key points in the Ninth Circuit Opinion were as follows:

- "The first prong [of the purposeful availment test] was satisfied because Lufthansa purposefully availed itself of the privilege of doing business in California. <u>Lufthansa</u>

contracted to carry Doe and Roe into California, and the contract required performance in California, the forum state." Opinion, p. 3.

- "The purposeful direction test was also satisfied because Lufthansa's conduct extended into California." *Id.*

- "The second prong was satisfied because Lufthansa's forum-related activities arose out of and related to the claims in this case. Both the breach of contract claim and the tort claims arose out of and related to the defendants' California activities. Lufthansa signed a contract for carriage into California, and allegedly breached that contract by disclosing information the contract guaranteed would be private. The contract for carriage is a but-for cause of the tort claims." *Id.*

Accordingly, the Ninth Circuit based its finding of personal jurisdiction exclusively on the contract of carriage between the parties, and the relation of the Plaintiffs' allegations to this contract of carriage. The Ninth Circuit further held that the claims arose out of and related to the contract of carriage, which was a but-for cause of the tort claims. As set forth below, all claims arising from the performance of the Plaintiffs' contract of carriage are preempted by the Montreal Convention, and must be dismissed for lack of subject matter jurisdiction and failure to state a claim.

**I**

**PLAINTIFFS' CLAIMS AGAINST LUFTHANSA ARE EXCLUSIVELY GOVERNED BY THE MONTREAL CONVENTION AND MUST BE DISMISSED FOR LACK OF TREATY JURISDICTION, A FORM OF SUBJECT MATTER JURISDICTION, UNDER ARTICLE 33 OF THE CONVENTION**

Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, (1999). Here, Plaintiffs' claims must be dismissed, either in whole or in part, to the extent the Court lacks subject matter jurisdiction to adjudicate those claims.

> **A.** **The Montreal Convention Applies Here because Plaintiffs' Alleged Claims Arose in the Course of Their "International Carriage" with Lufthansa or In the Operations of Embarking or Disembarking.**

The Montreal Convention is applicable to all "international carriage" of persons, baggage or cargo performed by aircraft for reward. Montreal Convention, Art. 1(1); *Narayanan v. British*

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

*Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014); *see also Chubb Ins. Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc.*, 634 F.3d 1023, 1026 (9th Cir. 2011).  Like its predecessor, the Warsaw Convention, "[t]he purpose of the Montreal Convention," aims "to achieve uniformity of rules governing claims arising from international air transportation." *Llanes v. Iberia Air Lines of Spain, S.A.,* No. 08-21445-CIV-UNGARO, 2008 WL 11417407, at *2 (S.D. Fla. June 30, 2008).  The expression "international carriage" is defined at Article 1(2) of the Montreal Convention as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated . . . within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

Montreal Convention, Art. 1(2).

The Ninth Circuit has already held that Plaintiffs' FAC alleges various claims that arose from allegedly tortious conduct that occurred during their "international carriage" on Lufthansa. Ninth Circuit Opinion, Appellate Dkt. No. 57.1, p. 14 ("And even so, Doe alleges additional injury from the lack of mitigation, which occurred both on the flight to San Francisco and at SFO.").  Accordingly, the Montreal Convention applies to Plaintiffs' claims.

### B.    The Montreal Convention Preempts Plaintiffs' State Law Causes of Action and Exclusively Governs Plaintiffs' Claims against Lufthansa.

Because the Montreal Convention applies to Plaintiffs' carriage with Lufthansa, the express language of Article 29 of the Convention makes clear that any action arising out of that carriage can only be brought subject to the conditions and limits of the Convention.  Article 29 of the Convention, provides, in pertinent part, that:

> In the carriage of passengers . . . any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . .

Montreal Convention, Art. 29; *Narayanan v. British Airways,* 747 F.3d 1125, 1127 (9th Cir. 2014).

The United States Supreme Court has held that the Warsaw Convention completely preempts state law causes of action whether "in contract or tort" and exclusively governs the

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

rights and liabilities of the parties. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999). Since *Tseng*, courts, including the Ninth Circuit Court of Appeals, have uniformly held that where it applies, the Montreal Convention, like the Warsaw Convention, preempts state law causes of action whether "in contract or tort" and exclusively governs the rights and liabilities of the parties.[1] Accordingly, it is well established that when a plaintiff's claim arises out of international carriage, all state law causes of action against the air carrier are preempted by the Montreal Convention, and the rights and liabilities of the parties are governed exclusively by the Convention. Here, it cannot be reasonably disputed that Plaintiffs' claims arose in the course of their "international carriage" with Lufthansa or in the operations of embarking or disembarking, and that their claims are exclusively governed by the Montreal Convention, as set forth in Argument II, *infra*.[2]

### C. The Court Lacks Treaty Jurisdiction, a Form of Subject Matter Jurisdiction, over Plaintiffs' Claims under Article 33 of the Montreal Convention.

In the United States, federal courts have subject-matter jurisdiction over claims arising under the Montreal Convention pursuant to 28 U.S.C. § 1331, which gives federal courts subject-matter jurisdiction over "all civil actions arising under ... treaties of the United States." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 74 (2d Cir.

---

[1] *Narayanan v. British Airways,* 747 F.3d 1125, 1127 (9th Cir. 2014); *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 114 (S.D.N.Y. 2004), *aff'd*, 194 Fed. Appx. 5 (2d Cir. 2006) (holding that the Montreal Convention has "substantially the same preemptive effect" as the Warsaw Convention); *Kruger v. United Airlines, Inc.*, 481 F. Supp. 2d 1005, 1008 (N.D. Cal. 2007); *Bloom v. Alaska Airlines*, 36 Fed. Appx. 278, 280 (9th Cir. 2002) (dismissing state law claims as preempted by Warsaw Convention); *Wysotski v. Air Canada*, No. C 02-04952 CRB, 2006 WL 581093, at *10 (N.D. Cal. Mar. 6, 2006) (holding that plaintiff's state law causes of action "collapse into its claim for breach of the Warsaw Convention"); *Miller v. Cont'l Airlines, Inc.*, 260 F. Supp. 2d 931, 937 (N.D. Cal. 2003) (holding that common carrier negligence claims were clearly within the Convention's preemptive scope); *see also Ambe v. Air France S.A.*, Case No.: 2:17-CV-08719 DDP-Ex, 2018 U.S. Dist. LEXIS 207194, at *6 (C.D. Cal. Dec. 7, 2018) ("Courts regularly, however, dismiss state law claims that fall within the Montreal Convention's scope"); *David v. United Airlines, Inc.*, Case No.: 2:15-cv-02262-ODW (PJWx), 2016 U.S. Dist. LEXIS 52457, at *15 (C.D. Cal. Apr. 18, 2016) (dismissing state law claims falling within Convention's scope); *Awimer v. Hava*, Case No.: 1:15-cv-69 GEB-GSA, 2015 U.S. Dist. LEXIS 138477, at *5-*7 (E.D. Cal. Oct. 9, 2015) (granting Rule 12(b)(6) motion to dismiss state law claims as preempted by Montreal Convention); *Fadhliah v. Societe Air France*, 987 F. Supp. 2d 1057, 1064-65 (C.D. Cal. 2013) (same).

[2] As a matter of procedure, Lufthansa addresses its arguments regarding lack of subject matter jurisdiction under Rule 12(b)(1) prior to its arguments regarding failure to state a claim under Rule 12(b)(6), although the arguments are directly related and intertwined.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO.: 3:23-cv-04413-SI

- 8 -

2023). Article 33 of the Montreal Convention operates as a limit on the exercise of this subject matter jurisdiction. *Id.* By stating where a damages action "must be brought," the provisions delimit which nation-states' courts can hear a claim arising under the treaty. *Id.* Specifically, the provisions dictate that for the courts of a given nation-state to have jurisdiction over a claim arising under the treaty, the nation-state must be both one of the "States Parties" to the Convention and one of the fora listed in Article 33. Therefore, in a damages action governed by the Montreal Convention, if the United States is not one of the designated fora, then courts in the United States cannot exercise treaty jurisdiction over the action. *Id.*

Article 33 of the Convention provides that in actions governed by the Montreal Convention, a plaintiff may bring an action in the United States for damages pursuant to the Montreal Convention only when the United States is: (1) "the domicile of the carrier"; (2) the "principal place of business" of the carrier; (3) the place where the carrier has a "place of business through which the contract has been made"; (4) "the place of destination"; or (5) the "principal and permanent residence" of the passenger. Montreal Convention, Art. 33; *Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 594 (S.D.N.Y. 2007). Here, with respect to Plaintiffs' contracts of carriage, none of these fora are in the United States.

### 1. Lufthansa Is Domiciled in Germany.

A carrier's domicile is generally regarded as its place of incorporation for the purposes of the Convention. *Aikpitanhi v. Iberia Airlines of Spain*, 553 F. Supp. 2d 872, 878 (E.D. Mich. 2008) (finding that, because Iberia Airlines is organized and exists under the laws of Spain, the airline's domicile is in Spain*); In re Air Disaster Near Cove Neck, N.Y., on Jan. 25, 1990*, 774 F. Supp. 718, 725 (E.D.N.Y.1991) (holding that an airline was domiciled where "incorporated and headquartered"); George N. Tompkins, Jr., Liability Rules Applicable to International Air Transportation as Developed by the Courts in the United States 255 (2010) ("The carrier's domicile is regarded as its place of incorporation."). Here, Lufthansa is domiciled in Germany. Declaration of James Stevens, ECF No. 16-1, ¶ 7.

### 2. Lufthansa's Principal Place of Business Is in Germany

A carrier can only have one principal place of business, and that location is generally

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

where the airline is incorporated or headquartered. *Aikpitanhi*, 553 F.Supp.2d at 876; *see also Swaminathan v. Swiss Air Transp. Co., Ltd.*, 962 F.2d 387, 390 (5th Cir.1992); *Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1175 (D.C.Cir.1991). Lufthansa also maintains its principal place of business in Germany. Declaration of James Stevens, ECF No. 16-1, ¶ 7.

### 3.    *Plaintiffs' Contract of Carriage Was Made in Saudi Arabia.*

Plaintiffs admit in both their original Complaint and their FAC that they booked their tickets from their home in Saudia Arabia and, therefore, the "place of business through which the contract has been made" is Saudia Arabia. FAC, ¶ 26, 27.

### 4.    *Plaintiffs' Place of Destination under Their Round-Trip Contract of Carriage Was Riyadh, Saudi Arabia.*

For purposes of a round-trip ticket, the "place of destination" is the destination where the round-trip tickets originated and terminated. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir.1995); *Klos v. Lotnicze*, 133 F.3d 164, 167 (2d Cir.1997); Tompkins, Jr., *supra*, at 258 (place of origin). Here, Plaintiffs' FAC alleges that they purchased roundtrip tickets originating and terminating in Riyadh, Saudi Arabia. FAC, ¶ 27. Accordingly, both Plaintiffs' destinations were Saudi Arabia—not the United States. *Fadhliah v. Societe Air France*, 987 F. Supp. 2d 1057, 1065–66 (C.D. Cal. 2013).

### 5.    *Plaintiffs' Principal and Permanent Residences at the Time of the Incident Were Saudia Arabia.*

Article 33 provides that "the nationality of the passenger shall not be the determining factor" in determining their "principal and permanent residence" at the time of the accident. Montreal Convention, Art. 33. Plaintiff Robert Roe is a Saudi Arabian citizen who, at the time of the incident alleged in the FAC, allegedly lived permanently in Saudi Arabia. FAC, ¶ 18. Accordingly, there can be no dispute that this Court cannot exercise subject matter jurisdiction over Robert Roe's claims arising under the Montreal Convention.

Although plaintiff John Doe alleges he is a United States citizen, based upon the allegations in the FAC, his principal and permanent residence, as well as his place of employment, was also Saudi Arabia at the time of this incident. FAC, ¶¶ 19, 22 (alleging that Doe is employed in Saudi Arabia as legal counsel and that Roe and Doe have lived together in

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

Saudi Arabia since 1989).  Moreover, "[t]he fact that Plaintiffs' travel terminated in Riyadh also bespeaks Plaintiffs' Saudi Arabian residency." *Fadhliah, supra*, 1057 at 1066.

Accordingly, under Article 33 and caselaw interpreting it, the United States is not a proper forum for Plaintiffs' claims arising under the Montreal Convention, and this Court lacks treaty jurisdiction over those claims.  Plaintiffs' claims alleged Lufthansa that arise under the Montreal Convention must therefore be dismissed, either in whole or in part, for lack of subject matter jurisdiction.

**II**
**ALL OF PLAINTIFFS' CLAIMS ALLEGED IN THIS LAWSUIT ARE PREEMPTED BY THE MONTREAL CONVENTION AND NOT COMPENSABLE UNDER ITS LIABILITY FRAMEWORK**

The five state-law causes of action alleged in Plaintiffs' FAC are exclusively governed by the Montreal Convention because they all arise from alleged conduct that either took place during the check-in process or onboard Lufthansa flights, while Plaintiffs were interacting with Lufthansa personnel. Although this Court has previously held that it needs additional information to determine whether Plaintiffs' claims arose in the course of embarking, the applicable caselaw demonstrates that this is not so – the allegations in Plaintiffs' FAC are lengthy, detailed and constitute judicial admissions that all of the conduct that forms the basis for Plaintiffs' claims occurred either onboard their international flights with Lufthansa or while attempting to check in for those flights.

> *A.*    *The Montreal Convention Applies Here because Plaintiffs' Alleged Claims Arose in the Course of Their "International Carriage" with Lufthansa or In the Operations of Embarking or Disembarking.*

Article 17(1) of the Montreal Convention provides as follows:

> 1. The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, Art. 17(1).

In this case, it cannot be reasonably disputed that all of Plaintiffs' claims that arose from conduct that occurred onboard Lufthansa aircraft is governed by the Montreal Convention and not compensable under the liability framework of Article 17.  There can be no question that these

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

claims must be dismissed, both for failure to state a claim and for lack of subject matter jurisdiction under Article 33. The only question the Court must resolve is whether Plaintiffs' claims arising from Lufthansa personnel's conduct during their check-in process at King Khalid Airport in Riyadh are governed by the Convention.

In *Lathigra v. British Airways PLC*, 41 F.3d 535, 539 (9th Cir. 1994), the Ninth Circuit Court of Appeals stated: "Once the passenger presents herself to the carrier or its agents as ready to begin the air journey, the Convention generally governs liability . . . and its provisions apply until completion of disembarkation at the destination airport." *Lathigra* is binding on this Court, and it cannot be reasonably disputed that Plaintiffs' alleged injuries occurred as the passengers presented themselves to the carrier or its agents as ready to begin the air journey and in connection with the very acts required to embark on Lufthansa aircraft.

If the Court considers it necessary to look beyond *Lathigra*, the applicable precedent dictates that Plaintiffs were "in the operations of embarking" at all times relevant to their claim. In *Day v. Trans World Airlines, Inc.*, 393 F. Supp. 217, 221 (S.D.N.Y.), *aff'd*, 528 F.2d 31 (2d Cir. 1975), passengers were subject to a terrorist attack after they had completed the check-in process, and while lined up for a security check prior to boarding. In considering whether these passengers' claims were governed by the Warsaw Convention, the *Day* Court looked at the control of the airline, the passengers' activity, and their location. In *Day*, the Court specifically held that checking in for a flight, including presenting one's ticket, passport, obtaining a boarding pass, a seat assignment, and checking one's bags, were part of the operations of embarking. The *Day* Court held that activities conducted "for the personal convenience of the passengers" or for "frolic and detour" in public areas of the airport did not constitute "the operations of embarking," but specifically held that checking in was an operation of embarking and that passengers in line to complete a procedure required to embark the aircraft were in the operations of embarking.

In *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1262 (9th Cir. 1977), the Ninth Circuit explicitly adopted *Day*. In *Maugnie*, the Ninth Circuit held in favor of the airline, concluding that the Warsaw Convention did not govern a passenger's claims because the

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

passenger had deplaned an Air France flight at Orly Airport and was heading to the Swiss Air gate to make her connecting flight to Geneva at the time of injury.[3]  The passenger had proceeded off of the aircraft and through a boarding lounge and into a common passenger corridor of Orly Airport.  In *Maugnie*, the Ninth Circuit explicitly rejected caselaw from the First Circuit, which had held that "embarking or disembarking" referred only to getting onto or off of an aircraft[4], and instead held that the analysis "requires an assessment of the total circumstances surrounding a passenger's injuries, viewed against the background of the intended meaning of Article 17. Location of the passenger is but one of several factors to be considered." *Id.* at 1262.

In *Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 48 (E.D.N.Y. 2006), the District Court explicitly held that a passenger's injuries allegedly incurred during the check-in process were exclusively governed by the Montreal Convention, reasoning that "the process of checking in itself is considered an operation of embarkation," and also relying on the *Day* decision.  In *Singh*, the passenger's injuries were not discovered until later, but arose as part of the check-in process when the passenger's bag was mislabeled.  Here, *Singh* is on all fours, as Plaintiffs claim that their injuries and damages occurred during the procedures required to check Plaintiffs in for their flight – specifically, during the presentation of documentation required to obtain a boarding pass.

All cases previously relied on by Plaintiffs for the proposition that checking-in is not part of the operations of embarking pertain to circumstances where the passenger was denied boarding, and the passenger's claims ultimately fell outside of the ambit of the Convention.  This case is not a non-performance case - rather, Plaintiffs allege claims based upon the actions of Lufthansa personnel as Plaintiffs were actively engaged in the process of checking in for their flight, so this precedent does not apply.  The allegations made by Plaintiffs regarding pre-flight tortious conduct exclusively pertain to their interactions with Lufthansa personnel in the process of checking in and attempting to obtain their boarding passes for their flights.  All cases to

---

[3] The passenger had sought to obtain the limitation of liability from Air France under the Warsaw Convention for her "slip and fall" injury while walking through the Orly Airport.

[4] *MacDonald v. Air Canada*, 439 F.2d 1402 (1st Cir. 1970); *Hernandez v. Air France*, 545 F.2d 279, at 284 (1st Cir. 1976).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

address this issue have found that the Montreal Convention governs claims that arise during the check-in process, assuming that the carrier actually transports the passengers and does not refuse to transport.

In *King v. Am. Airlines, Inc.*, 284 F.3d 352 (2d Cir. 2002), the plaintiffs alleged various civil rights claims arising from American Airlines' act of taking away their boarding passes and "bumping" them to the next flight, claiming that this act was racially motivated. Then-Circuit Judge Sotomayor held that the passengers' discrimination claims arose from events that occurred in the course of embarkation on flight, and thus both fell within substantive scope of, and were preempted by, Warsaw Convention. Judge Sotomayor reasoned that "uniformity requires, however, that passengers be denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all." *Id.*, *citing Tseng*, 525 U.S. at 161, 175–76.

Here, Plaintiffs' claims undoubtedly fall within the preemptive scope of the Montreal Convention. An examination of the FAC reveals that all conduct that forms the basis for Plaintiffs' claims took place either on their Lufthansa flights, while Plaintiffs were interacting with Lufthansa personnel at the Lufthansa check-in desk, or while they were being "held" at Lufthansa offices submitting documentation to Lufthansa personnel. The very purpose of the Montreal Convention is to ensure uniformity in claims arising from international carriage where passengers travel around the world to various jurisdictions with vastly different legal regimes. This Court should apply the Montreal Convention to bar Plaintiffs' claims against Lufthansa here.

### B.    The Montreal Convention Bars Recovery for the Type of Injuries Alleged by Plaintiffs in this Lawsuit.

The United States Supreme Court has held that in order to bring a claim for liability under the Montreal Convention, a plaintiff must establish "death or bodily injury" under Article 17. *See Air France v. Saks*, 470 U.S. 392, 405, 406 (1985); *Eastern Airlines v. Floyd*, 499 U.S. 530, 535-36 (1991) (Warsaw). The Supreme Court has also unequivocally held that mental injury that is unaccompanied by physical injury does not qualify as a bodily injury under Article 17. *Id.* at 534. Courts have ruled that to establish a "bodily injury," plaintiffs must present proof

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

of an objective and identifiable injury to the body.  *See Heinemann v. United Cont'l Airlines*, No. 2:11-CV-00002-MJP, 2011 WL 2144603, at *4 (W.D. Wash. May 31, 2011); *Salis v. Ghana Airways*, 9 A.D.3d 421, 780 N.Y.S.2d 627, 629 (2004); *Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848, 855-56 (1974) (explaining that "the ordinary, natural meaning of 'bodily injury' as used in Article 17 connotes palpable, conspicuous physical injury" and a "claim must therefore be predicated upon some objective identifiable injury to the body").  United States courts have also held that "mental injuries are recoverable under Article 17 only to the extent that they have been **caused by bodily injuries**." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 400 (2d Cir. 2004) (emphasis added).

Here, Plaintiffs allege that Robert Roe has sustained a bodily injury because on or about November 2023, several years after this incident occurred in 2021, he was "diagnosed with pulmonary fibrosis, a terminal illness, directly and proximately caused by the effect of the enormous stress suffered by Roe on a theretofore-latent genetic anomaly – a death sentence imposed on him by Lufthansa which has upended Plaintiffs' loving, thirty-year relationship." FAC, ¶ 2; Declaration of Donald Putterman, ECF No. 62, ¶ 3.

In *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530 (1991), the Supreme Court held that "an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury," concluding that Article 17's French phrase lésion corporelle carries "a narrow meaning excluding purely mental injuries." The Court grounded this holding in the drafting history of the Convention, finding that the signatory nations' failure to explicitly include purely psychic injury — particularly given that such recovery was unavailable in most jurisdictions in 1929 — reflected a deliberate intent to limit liability to physical harm.

The Supreme Court addressed this issue in *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 166 n. 9 (1999).  In *Tseng*, the defendant airline, as a pre-boarding security measure, subjected the plaintiff to an extensive search of her person, not unlike the claims alleged by Plaintiff in this case. "Traumatized and humiliated, [plaintiff] left feeling raped." Brief for Respondent, *El Al Israel Airlines, Ltd. v. Tseng* (U.S. July 29, 1998) (No. 97–475) 1998 WL

438498, at *2.  During the flight, she felt "really sick, very upset" and nervous, and had a headache. *Tseng*, 122 F.3d at 101, 919 F. Supp. at 157. Later, she required medical and psychiatric treatment for "emotional[ ] trauma" and for symptoms including "headaches, upset stomach, ringing in her ears, nervousness and sleeplessness." 122 F.3d at 101, 919 F. Supp. at 157.

The District Court (Stanton, J.) had held that Tseng had not suffered the requisite injury under *Floyd*: "[h]er body was not injured by the woman who searched her... On the contrary, all of her personal injuries are attributable to her shock and outrage at the way she was treated. Although her injuries may have had physical manifestations, those are the types of psychic or psychosomatic injuries barred by Floyd…". *Id.* at 158.

The Second Circuit reversed on the issue of preemption, and the Supreme Court then reversed, agreeing with the District Court that the Convention bestows an exclusive remedy. The question of whether the symptoms expressed by the plaintiff amounted to the required "bodily injury" was not at issue before the Second Circuit and was not directly before the Supreme Court.  Significantly though, the Supreme Court opinion broadly supports the district court opinion, holding that, "Tseng alleges psychic or psychosomatic injuries, but no 'bodily injury,' as that term is used in the Convention." 525 U.S. at 160; cf. id. at 164, (quoting the District Court's conclusion that *Floyd* does not permit "recovery for psychic or psychosomatic injury unaccompanied by bodily injury"); *id.* at 171 (the Convention excludes recovery for "those merely traumatized" in an accident); *id.* at 172 (concluding that Tseng "sustained" only "psychic or psychosomatic injuries").

Lower courts, including the Ninth Circuit Court of Appeals, have consistently followed *Floyd* and *Tseng*, holding that physical symptoms whose genesis is emotional distress do not satisfy the "bodily injury" standard, even where those symptoms manifest in the body. *Carey v. United Airlines*, 255 F.3d 1044 (9th Cir. 2001) (nausea, cramps, perspiration, nervousness, tension, and sleeplessness following a confrontational incident were purely psychic injuries insufficient under Article 17); *Turturro v. Continental Airlines*, 128 F. Supp. 2d 170, 177 (S.D.N.Y. 2001), (physical manifestations of emotional distress resulting from an accident are

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone:  (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

not compensable under the Convention); *Bobian v. Czech Airlines*, 93 Fed.Appx. 406, 407-408 (3d Cir. 2004) (stress-related physical changes to the brain not a bodily injury under the Convention); *Terrafranca v. Virgin Atlantic Airways Ltd.*, 151 F.3d 108 (3d Cir. 1998) (same); *In re Air Crash at Little Rock Arkansas*, on June 1, 1999, 291 F.3d 503, 512 (8th Cir. 2002)("physical manifestation of mental injuries such as weight loss, sleeplessness, or physical changes in the brain resulting from chronic post-traumatic stress syndrome would not be compensable under the Warsaw Convention.").

Under this framework, symptoms of a rare, latent, genetic condition that are first triggered by flight-related stress are most naturally characterized as physical manifestations of an emotional reaction, not as the type of direct, concrete, and independently-caused bodily injury that Article 17 requires. The Eleventh Circuit underscored this causation logic in *Jacob v. Korean Air Lines Co. Ltd.*, 606 Fed. Appx. 478 (11th Cir. 2015): "the Convention simply does not provide a remedy for subsequent physical manifestations of an earlier emotional injury." *Id.* at 482. Where a passenger's alleged physical injury traces its proximate cause to stress — an inherently internal, psychological trigger — courts will find that the causal chain is "backwards." *Id.* The Convention requires bodily injury to precede and cause mental harm, not the reverse. Accordingly, Plaintiffs' FAC must be dismissed because all claims alleged therein are preempted by the Montreal Convention, and not compensable under its liability framework.

### III
### IN THE ALTERNATIVE, PLAINTIFFS' CLAIMS ALLEGED AGAINST LUFTHANSA MUST BE STRICKEN UNDER § 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST LUFTHANSA UNDER CALIFORNIA LAW AND CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON THE MERITS

Even if the Court were to find that Plaintiffs could assert claims against Lufthansa outside of the Montreal Convention, Plaintiffs fail to state any viable claim against Lufthansa under California law. In a diversity case, federal courts apply the substantive law of the forum in which the court is located, unless a party invokes the laws of another jurisdiction. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). At this stage of the proceedings, as no party has yet argued that the law of a foreign jurisdiction should be applied to this lawsuit, the Court should apply California law to determine the viability of Plaintiffs' claims.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

California's anti-SLAPP statute provides a procedural mechanism to strike meritless claims arising from protected activity. In federal court, anti-SLAPP provisions apply to state-law claims under *Erie* principles, and courts in the Ninth Circuit routinely adjudicate anti-SLAPP motions alongside Rules 12(b)(6) motions. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022). The analysis proceeds in two steps: first, the court must ask what public issue or issue of public interest is implicated by the challenged activity. *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1246 (2022). This first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, <u>even if it also implicates a private dispute.</u> *Id.* at 1253 (*emphasis added*). Speech relating to LGBTQ+ rights constitutes a public issue. *Sandoval v. Pali Inst., Inc.*, 113 Cal. App. 5th 616 (2025). Second, for each claim that does arise from protected activity, the plaintiff must show a probability of prevailing on the claims *Id.* at 625.

### A. The Challenged Statements and Related Conduct Are Protected Speech Made in a Public Forum in Connection with the Issue of Same-Sex Marriage.

By way of this lawsuit, Plaintiffs seek to hold Lufthansa liable for its employee's public comments expressing incredulity regarding the fact of Plaintiffs' same-sex marriage and/or the act of reporting Plaintiffs' marital status to the government of Saudi Arabia. The challenged statements and related conduct fall squarely within § 425.16(e)(3) and (e)(4) of the California Code of Civil Procedure as either (1) speech made in a public forum in connection with an issue of public interest and/or (2) conduct in furtherance of free speech in connection with an issue of public interest. Under the two-step framework, Lufthansa easily satisfies step one.

### B. Plaintiffs Cannot Establish a Probability of Prevailing on Any of their Claims on the Merits.

As a preliminary matter, Plaintiffs' allegations of causation and damages are insufficient as a matter of law to support their causes of action. Plaintiffs claim that the fact of their marriage has been disclosed to the government of Saudi Arabia, and specifically allege that there "no conceivable way the Saudi Arabian government could have learned about Plaintiffs' marriage" other than the alleged public comments made by Lufthansa's employee. FAC, ¶ 69. This is insufficient as a matter of law to establish causation. Moreover, Robert Roe's claim that Lufthansa is the reason that he cannot return to Saudi Arabia is facially implausible – Robert Roe

cannot return to Saudi Arabia because his sexual orientation constitutes a capital crime in Saudi Arabia. This cannot, as a matter of law, be the fault of Lufthansa.

### 1. Plaintiffs' Claim for Public Disclosure of Private Facts Fail.

The elements of a cause of action for public disclosure of private facts are: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214, 955 P.2d 469, 478 (1998), *as modified on denial of reh'g* (July 29, 1998). Plaintiffs fail to plead facts that satisfy any element of the cause of action for public disclosure of private facts.

Preliminarily, Plaintiffs have not alleged facts that would support their claims that there was a public disclosure of their marital status. Plaintiffs have alleged that a Lufthansa check-in agent repeated their disclosure of their marital status loudly at the check-in desk, and then repeated their marital status to other Lufthansa personnel, allegedly in a demeaning fashion. Plaintiffs further conjecture in their Complaint that Lufthansa indirectly disclosed Plaintiffs' marital status to the government of Saudi Arabia due to the alleged Saudi Arabian government practice of monitoring emails. Liability for the tort of public disclosure of private facts requires "publicity"; disclosure to a few people in limited circumstances does not violate the right. *Porten v. University of San Francisco*, 64 Cal. App. 3d 825, 840, 134 Cal. Rptr. 839 (1976); *Timperley v. Chase Collection Service*, 272 Cal. App. 2d 697, 700, 77 Cal. Rptr. 782 (1969); *Schwartz v. Thiele*, 242 Cal.App.2d 799, 805, 51 Cal. Rptr. 767 (1966). "The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity." *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 828, 134 Cal. Rptr. 839, 841 (1976). The tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few. *Id.* In *Porten*, the University of San Francisco's disclosure of plaintiff's grades at a former university to the Scholarship and Loan Commission was not deemed sufficient to constitute a publication of private facts. *Id.* Similarly, here, even accepting all of Plaintiff's allegations as true, publication of the fact of Plaintiffs' marriage was made only verbally to individuals who happened to be

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

present at the time Plaintiffs were checking in, as well as to other Lufthansa personnel, and as Plaintiffs conjecture, to the government of Saudi Arabia by way of its monitoring of internal emails.  Plaintiffs have not made any type of allegation that Lufthansa publicized Plaintiffs' marital status other than to those few people who could hear Jamshed's alleged statements in a crowded airport.

Moreover, Plaintiffs fail to state a claim for public disclosure of private facts because their marriage is not a private fact – it is a matter of public record.  The First Amendment precludes recovery for the disclosure of facts that are a matter of public record.  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S. Ct. 1029, 1045, 43 L. Ed.2d 328, 348 (1975).  In California, marriage licenses are public records.  *See* https://www.cdph.ca.gov/Programs/CHSI/Pages/Types-of-Marriage-Licenses-.aspx, last accessed May 14, 2026.  In the State of California, marriage licenses are registered at the County Recorder's Office in the county where the license was purchased, here, San Mateo County, and anyone may request copies of the marriage license by submitting the required fee to the County Recorder.  *Id.*

Plaintiffs also have affirmatively alleged that plaintiff Robert Roe was required to disclose his marital status to Lufthansa and customs authorities, an agency of the government, in order to board an international flight to the United States.  Therefore, Plaintiffs have failed to plead that the disclosure of their marital status would be objectively offensive and unreasonable by any standard.  Rather, Plaintiffs have affirmatively pleaded that the disclosure of their marital status to the airline and government authorities in Saudi Arabia and the United States was necessary and required in order for plaintiff Robert Roe to board a flight from Riyadh to San Francisco during the height of Covid-19 restrictions on passenger travel.

Plaintiffs cannot establish a probability of prevailing on any element of this cause of action.  This claim is not only subject to Lufthansa's special motion to strike, but it also must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. *Plaintiffs' Cause of Action for Breach of Contract Fails.*

Under California law, in order to state a cause of action for breach of contract, a complaint must indicate on its face whether the contract is written, oral, or implied by conduct.

*Otworth v. Southern Pac. Transportation Co.*, 166 Cal. App. 3d 452, 458-459, 212 Cal. Rptr. 743 (1985); CAL. CIV. PROC. CODE § 430.10 (g) (West 2026).   If the action is based on alleged breach of a written contract, the terms must be set out **verbatim** in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference.  *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307, 87 Cal. Rptr. 2d 822, 828 (1999); *Otworth*, *supra*, 166 Cal. App. 3d at 359.  Plaintiffs' Complaint does not specify what type of contract they seek to enforce.  Further, Plaintiffs do not set out the terms of the contract verbatim or attach a copy of the written agreement containing the terms Lufthansa is alleged to have breached.  Plaintiffs' cause of action for breach of contract fails on this basis alone.

Plaintiffs' Complaint selectively quotes from a source extrinsic to the contract between Lufthansa and Plaintiffs - Lufthansa's Data Protection Information.  Although Plaintiffs claim this is part of their contract with Lufthansa, Lufthansa's Data Protection Information is just that – information - provided for informational purposes only and forms no part of the contract of carriage.  However, even if Lufthansa's Data Protection Information did form part of the contract of carriage between Lufthansa and Plaintiffs, by its own terms, Lufthansa's Data Protection Information explicitly notifies consumers that their personal data may be shared with "government authorities and institutions, e.g. on the basis of entry regulations or police activities and investigations," along with multiple other notifications regarding the potential disclosure of passenger information as necessary for compliance with Covid-19 travel restrictions.  *See* https://www.lufthansa.com/at/en/data-protection-information, last accessed May 15, 2026. Plaintiffs do not reference these portions of Lufthansa's Data Protection Information in their FAC, but even the portion that Plaintiffs do reference permits the processing of information necessary for the completion of the contract, and permits the collection and dissemination of personal information to local authorities if such information is necessary for the passenger's travel, as it allegedly was here.  FAC, ¶ 19.  Plaintiffs cannot establish a probability of prevailing on any element of this cause of action.  This claim is not only subject to Lufthansa's special motion to strike, but it also must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone:  (310) 557-2030

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO.: 3:23-cv-04413-SI

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

### 3.    *Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails.*

Under a theory of Intentional Infliction of Emotional Distress ("IIED"), a plaintiff must plead and prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1988). To be successful, the conduct of the defendant must be "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id*. " '[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' ", including remarks that may be considered homophobic, do not constitute extreme and outrageous conduct. *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998). An intentional infliction of emotional distress claim may not be based on constitutionally protected speech or conduct. As stated above, Plaintiffs' marital status is a matter of public record, and Plaintiffs have also affirmatively pleaded that their marital status was directly relevant to their ability to travel to the United States in the midst of Covid-19 travel restrictions. Plaintiffs cannot predicate a cause of action for intentional infliction of emotional distress on constitutionally protected (alleged) speech by Lufthansa personnel regarding Plaintiffs' marital status in connection with their international travel. Plaintiffs cannot meet their burden of establishing a probability of prevailing on this cause of action, and this cause of action also must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

### 4.    *Plaintiffs Claim for Negligent Infliction of Emotional Distress Fails.*

Negligent Infliction of Emotional Distress ("NIED") is not an independent tort in California, but a subset of negligence. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). As such, Plaintiffs must adequately plead the "traditional elements of duty, breach of duty, causation, and damages." *Id.*; *Hall v. Apollo Grp., Inc.*, 2014 WL 4354420, at *6 (N.D. Cal. Sept. 2, 2014) ("The elements of a claim of negligent infliction of emotional distress are: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; and (3) the defendants' negligent conduct was a cause of the serious emotional distress"). There are

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

two possible theories of liability in an NIED cause of action: the bystander theory and the direct victim theory. *Burgess*, 2 Cal. 4th at 1071. In direct victim cases, such as the case at bar, a duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993); *Burgess*, 2 Cal.4th at 1073 (liability for NIED can be imposed for "a breach of duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two"). Additionally, "public policy considerations are relevant in determining whether a particular plaintiff may recover damages for emotional distress." *Christensen v. Superior Court*, 54 Cal.3d 868, 885 (1991). Here, Plaintiffs have not pleaded that Lufthansa breached any duty imposed by a special relationship – to the extent Plaintiffs are attempting to hold Lufthansa to duties imposed by contract, these duties are not sufficiently alleged, as set forth above. Further, Plaintiffs have affirmatively alleged that they were required to disclose their marital status to Lufthansa and customs and border officials in order to travel to the United States in the midst of Covid-19 travel restrictions. Plaintiffs cannot establish a probability of prevailing on any element of this cause of action. This claim is not only subject to Lufthansa's special motion to strike, but it also must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 5. Plaintiffs' Claim for Loss of Consortium Fails.

A cause of action for loss of consortium has four elements: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284–85, 282 P.3d 1242, 1246 (2012). Plaintiffs fail to state a claim for loss of consortium because Plaintiffs do not allege any type of disabling injury sustained by either Plaintiff as the result of the alleged incident. Moreover, Plaintiffs do not allege facts that would establish that either Plaintiff's ability to fulfill their conjugal roles has been compromised in anyway.

Beyond the fact of their marriage, Plaintiffs' Complaint does not allege facts that would satisfy any other element of this cause of action. Plaintiffs have failed to allege that either

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

spouse has sustained an injury that is sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired. *Molien v. Kaiser Foundation Hospitals*, supra, 27 Cal. 3d 916, 932–933, 167 Cal. Rptr. 831, 616 P.2d 813 (1980). In fact, Plaintiffs have not alleged a bodily injury to either spouse. Pursuant to the doctrine of loss of consortium as articulated by the California Supreme Court in *Rodriguez v. Bethlehem Steel*, the plaintiff must no longer be capable of giving love, affection, society, comfort and sexual relations to their spouse. *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 400 (1974). California courts have held that a loss of consortium claim cannot be premised upon solely psychological injuries to the nonplaintiff spouse such as the wrongful termination of employment, or a cause of action employment discrimination. *Smith v. Grumman*, 60 F. Supp. 3d 1051, 1058–59 (N.D. Cal. 2014). Similarly, a loss of consortium claim cannot be premised upon the alleged wrongful disclosure of marital status in the absence of any tortious injury.

Furthermore, Plaintiffs have not alleged that there has been any loss of consortium, as that term has been defined by the California courts as set forth above, or that Lufthansa caused said loss of consortium. Plaintiffs' Complaint alleges that Plaintiffs are living apart at this moment by choice because plaintiff Robert Roe, a Saudi citizen, cannot return to Saudi Arabia for fear he will be persecuted for his sexual orientation, and because plaintiff John Doe, a U.S. citizen, cannot visit the United States more than quarterly because he has chosen to live in Saudi Arabia for his employment. This is a personal choice on Plaintiffs' part, and not an actionable loss of consortium under the California Supreme Court's holding in *Rodriguez*. Plaintiffs cannot establish a probability of prevailing on any element of this cause of action. This claim is not only subject to Lufthansa's special motion to strike, but it also must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CONCLUSION

Lufthansa respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint, with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. In the alternative, Lufthansa requests the Court to strike Plaintiffs' First Amended Complaint under § 425.16 of the California Code of Civil Procedure.

Dated: May 15, 2026                    CONDON & FORSYTH LLP


By: /s/ Ivy L. Nowinski
    IVY L. NOWINSKI

    - and -

    ANTHONY BATTISTA
    (*Pro Hac Vice* Application to be Filed)
    Email: abattista@condonlaw.com
    CONDON & FORSYTH LLP
    7 Times Square
    New York, New York 10036
    Telephone: (212) 490-9100
    Facsimile:  (212) 370-4453

    Attorneys for Defendant
    DEUTSCHE LUFTHANSA
    AKTIENGESELLSCHAFT

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone:  (310) 557-2030

NOTICE OF MOTION AND MOTION TO DISMISS                    - 25 -
CASE NO.: 3:23-cv-04413-SI