United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE and ROBERT ROE,<br>Plaintiffs,<br>v.<br>DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT,<br>Defendant. | Case No. 23-cv-04413-SI<br>**ORDER DENYING LUFTHANSA'S MOTION TO DISMISS AND/OR STRIKE**<br>Re: Dkt. No. 70 |

On August 21, 2026, the Court held a hearing on the motion to dismiss filed by Deutsche Lufthansa Aktiengesellschaft ("Lufthansa"). For the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

In an order filed April 28, 2026, the Court granted plaintiffs leave to file an amended complaint. Dkt. No. 66.[1] The Court addressed Lufthansa's contention that the Montreal Convention preempted plaintiffs' claims and found that "[g]iven the fact intensive nature of the inquiry [about whether plaintiffs were engaged in "embarkation" under the Montreal Convention] and the early stage of the proceedings, it is premature to determine whether the Montreal Convention preempts plaintiffs' claims." *Id*. at 9-10. The Court further found that because it "is premature to determine whether the Montreal Convention applies, the Court does not address Lufthansa's argument that the Court lacks subject matter jurisdiction under Article 33 of the Convention." *Id*. at 11 n.5.

On May 1, 2026, plaintiffs filed the amended complaint. Dkt. No. 69. The amended

[1] The Court's order recounted the allegations of the proposed amended complaint at length. The Court assumes the parties' familiarity with those allegations and does not repeat them here.

complaint asserts five causes of action under California law: (1) Public Disclosure of Private Facts; (2) Intentional Infliction of Emotional Distress; (3) Breach of Contract; (4) Negligent Infliction of Emotional Distress; and (5) Loss of Consortium/Civ. Code § 1431.2l.

Now before the Court is Lufthansa's motion to dismiss and/or strike the amended complaint. Lufthansa again contends that plaintiffs' claims are preempted by the Montreal Convention and that the Court lacks subject matter jurisdiction under the Convention. Lufthansa also contends that in the alternative, plaintiffs' claims must be stricken under California's Anti-SLAPP statute, California Code of Civil Procedure § 425.16, arguing that plaintiffs' claims arise out of Lufthansa's constitutionally protected speech and that plaintiffs cannot prevail on the merits. Finally, Lufthansa argues that if this Court does not dismiss this case under either the Montreal Convention or California law, the Court should find that Saudi Arabian law applies and dismiss the case under that foreign law.

## DISCUSSION

### I. Montreal Convention

Lufthansa asserts several arguments based upon the Montreal Convention. Lufthansa argues that the Montreal Convention applies to this case because plaintiffs' claims arose in the course of their "international carriage" with Lufthansa or in the operations of embarking or disembarking. Lufthansa contends that because plaintiffs' claims are preempted by and exclusively governed by the Montreal Convention, this Court lacks subject matter jurisdiction under Article 33 of the Convention because plaintiffs filed suit in the incorrect forum. Alternatively, Lufthansa argues that the Montreal Convention bars recovery for the types of mental injuries alleged by plaintiffs. The only new argument by Lufthansa relates to the Ninth Circuit's majority opinion regarding personal jurisdiction. Lufthansa contends that the Ninth Circuit based its finding of personal jurisdiction exclusively on the international contract of carriage between the parties, and thus "all claims arising from the performance of the Plaintiffs' contract of carriage are preempted by the Montreal Convention." Mtn. at 6.

Plaintiffs respond that the FAC "does not allege any damages premised upon any occurrence

during Plaintiffs' flights," and instead that plaintiffs' allegations regarding what happened during the flights is only relevant to plaintiffs' efforts to mitigate damages. Opp'n at 6-7. At the hearing, in response to Lufthansa's arguments about personal jurisdiction, plaintiffs' counsel also emphasized defendants' conduct in California after disembarkation, namely the Lufthansa agent assuring plaintiffs that another Lufthansa agent would call them about the incident, and Lufthansa's failure to do so.

The Court has carefully considered Lufthansa's Montreal Convention arguments. As stated in the Court's April 20, 2026 order, whether plaintiffs were engaged in the operations of "embarkation" during their interactions with Jamshed at the Riyadh airport involves factual questions that cannot be resolved at this early phase of the litigation (and thus the Court does not address Lufthansa's argument that the Court lacks subject matter jurisdiction under Article 33 of the Convention). The Court agrees with Lufthansa that any claims arising out of events that occurred on the international flights would be preempted, but plaintiffs have expressly stated that they are not asserting such claims and are not seeking damages based on anything that happened on the flights. Finally, although Lufthansa's arguments regarding the Ninth Circuit's opinion and the interplay between Montreal Convention preemption and personal jurisdiction are not without force, the Ninth Circuit held that plaintiffs' tort claims "include acts and omissions that happened . . . while in California" and therefore "they relate to activity in California." *Doe v. Lufthansa*, 157 F.4th 1103, 1113 (9th Cir. 2025). "[A]ctivity in California" – if not part of "disembarkation" – is not preempted by the Montreal Convention, and provides a basis for personal jurisdiction. Whether what occurred in California is part of "disembarkation" raises factual questions that cannot be resolved at this juncture. The Ninth Circuit also held that plaintiffs' breach of contract claim "arises out of and relates to Lufthansa's California-related activities," because the dispute "'grew directly out of a contract which had a substantial connection with' the forum state[.]" *Id*. at 1112 (quoting *Burger King v. Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)). Here, plaintiffs allege that Lufthansa breached the contract by disclosing their personal information, and that dispute grew directly out of a contract for carriage that had a substantial connection to California.

For these reasons, the Court DENIES Lufthansa's motion to dismiss based upon the

Montreal Convention. Lufthansa may renew its arguments after the development of a full factual record.

**II. Anti-SLAPP**

The California Legislature passed California Civil Procedure Code section 425.16 to address "a disturbing increase" in Strategic Lawsuits Against Public Participation ("SLAPPs"), or suits brought "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Section 425.16 permits defendants (or counterclaim defendants) to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" *Id.* § 425.16(b)(1), (h). A special motion to strike under section 425.16 is commonly referred to as an anti-SLAPP motion.

In order to prevail on an anti-SLAPP motion, the movant must first make a *prima facie* showing, through the pleadings themselves and supporting affidavits, that the statement or conduct underlying the legal claims against it qualifies for protection under the anti-SLAPP statute. *Id.* § 425.16(b)(2); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). The burden then shifts to the non-moving party to demonstrate a probability of prevailing on the challenged claims. Cal. Civ. Proc. Code § 425.16(b)(1); *Vess*, 317 F.3d at 1110.

Lufthansa contends that Jamshed's speech and conduct qualifies for protection under the anti-SLAPP statute as "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. § 425.1(e)(3)-(4). Lufthansa argues that Jamshed spoke in a place open to the public (the Riyadh airport) and that he spoke about an issue of public interest (gay marriage in a country where homosexuality is illegal).

Plaintiffs contend that Lufthansa's anti-SLAPP motion fails at the threshold because Lufthansa cannot show that the statement or conduct underlying their claims (Jamshed's speech and

conduct in Saudi Arabia) is protected under the United States or California Constitutions. Plaintiffs argue that because Lufthansa is a German corporation not residing in the United States, Lufthansa cannot assert constitutional protection for Jamshed's speech and conduct. Plaintiffs cite *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020), in which the Supreme Court rejected a First Amendment challenge brought by foreign organizations who objected to a requirement, as a condition of receiving federal funding to combat HIV/AIDS abroad, to adopt a policy explicitly opposing prostitution and sex trafficking (referred to as the "Policy Requirement"). The Supreme Court had held in an earlier case that the Policy Requirement was unconstitutional as applied to American organizations receiving such federal funding. *See Agency for Int'l Development v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205, 214 (2013). The second case was brought by legally distinct foreign affiliates of the American organizations. The Supreme Court stated that "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution[,]" and that "it is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Agency for Int'l Dev.*, 591 U.S. at 434-35. Thus, "[a]s foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id*. at 436.

Lufthansa argues that although it is a foreign corporation, it is not a "foreign corporation operating abroad" under *Agency for International Development* because it "maintains a substantial presence in California." Reply at 8. While it is true that Lufthansa maintains a substantial presence in this State, the speech and conduct at issue here occurred in Saudi Arabia, not the United States. In *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021), the Ninth Circuit held that the First Amendment protected the speech and speech-related conduct of two Australian citizens who were outside of the United States, but who directed their speech and speech-related conduct to a California resident. The court noted that the "[t]he First Amendment protects speech for the sake of both the speaker and the recipient[,]" and that "the First Amendment right to receive information includes the right to receive information from outside the United States." *Id*. at 743-44. Because the recipient of the speech and speech-related conduct was in California, and the speech and speech-

related conduct occurred in California, the Court of Appeals held that the First Amendment protected that speech and speech-related conduct. *Id.* The Ninth Circuit distinguished cases that "involve speech outside the United States" and expressly did not "consider under what other circumstances a noncitizen living abroad has standing to claim the protections of the First Amendment." *Id.* at 744. Lufthansa has not cited any cases holding noncitizens or foreign corporations have standing to assert First Amendment claims for speech or speech-related conduct that occurs entirely abroad, nor was the Court able to locate any authority on the issue in its research.

Lufthansa cites several cases for the proposition that courts have "permitted" foreign corporations to bring anti-SLAPP motions. However, these cases are factually distinguishable in that they involve speech that occurred in the United States. Further, it does not appear that the plaintiffs in these cases challenged the foreign corporations' standing to bring the anti-SLAPP motions, and thus none of the cases analyzed the specific question of whether the foreign corporations possessed rights under the United States or California constitutions. In *Resolute Forest Prods., Inc. v. Greenpeace Int'l et al.*, 302 F. Supp. 3d 1005 (N.D. Cal. 2017), the plaintiff company brought RICO and state law claims against foreign and U.S. Greenpeace entities and employees, alleging that the Greenpeace defendants targeted the plaintiff with media campaigns containing false and misleading statements about the company's environmental impacts. Judge Tigar granted an anti-SLAPP motion filed by all of the Greenpeace defendants, without distinguishing between the foreign and domestic entities and individuals. *Id.* at 1026. Importantly, at least some of the plaintiff's claims were based on allegedly improper statements made by Greenpeace entities and employees in the United States and Northern California specifically. *Id.* at 1013. In *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004), the district court granted an anti-SLAPP motion brought by a Swedish company, finding that the corporation engaged in protected speech whenever a user downloaded the defendant's software program that was "available for free on the internet," including users in the Central District of California. *Id.* at 1097, 1105-15. Finally, in *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 155 (2d Cir. 2013), the court did not rule on the merits of an anti-SLAPP motion, and instead addressed choice of law questions. *See id.* ("Because the plaintiff initially brought this suit in California and then voluntarily transferred it to the Eastern

District of New York, and because a California state court would have applied California's anti-SLAPP rule as a procedural matter, the aspects of California's anti-SLAPP rule considered substantive by federal law continue to apply in this case, notwithstanding that the case is now being heard in New York, and notwithstanding that the cause of action is otherwise governed by substantive New York law.").

Lufthansa also contends that there is no language in the anti-SLAPP statute that excludes foreign corporations from its ambit. Lufthansa is correct that California's anti-SLAPP statute does not explicitly exclude foreign corporations from its protections. However, in order to prevail on an anti-SLAPP motion, a party must demonstrate that the cause of action alleged against them "arises from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution," and thus Lufthansa must show that Jamshed's speech and conduct is entitled to protection under the United States or California constitutions. Cal. Civ. Proc. § 425.16(b)(1).

The Court concludes that under the facts of this case, where the defendant is a foreign corporation and Jamshed's speech and speech-related conduct occurred in Saudi Arabia, California's anti-SLAPP statute is not implicated.

## III. Choice of Law

Lufthansa contends that Saudi Arabian law should govern this case, and that because Saudi Arabian law criminalizes homosexuality, plaintiffs do not have a viable cause of action and the case should be dismissed. Plaintiffs contend that California law should apply.

The parties agree that the choice of law analysis for plaintiffs' state law claims is governed by California law. *See Competitive Tech. v. Fujitsu Ltd*., 286 F.Supp.2d 1118, 1115-57 (N.D. Cal. 2003) ("In diversity cases, the choice of law rules of the state in which the court sits are applied. Similarly, in federal question cases where the court is exercising supplemental jurisdiction over state law claims, the federal court applies the choice of law rules of the forum state to those state law claims.") (citation omitted). "California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues . .

. ." *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 919 (2001). This analysis has three parts:

> First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a "false conflict" and the law of the interested jurisdiction is applied. On the other hand, if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the "comparative impairment" of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citations omitted). The choice of law analysis includes a presumption that California law applies; the proponent of foreign law therefore bears the burden of showing that there is a compelling reason to displace California law. *Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992).

The parties agree that at the first step of the choice-of-law analysis, the laws of Saudi Arabia and California differ. The parties state that Saudi Arabian law is based on religious Sharia law and they agree that homosexuality is a crime in Saudia Arabia, punishable in various ways including imprisonment and the death penalty, and thus plaintiffs have no recourse under Saudi Arabian law. *See generally Saudi Arabia Country Profile*, HUMANDIGNITYTRUST.ORG, https://www.humandignitytrust.org/country-profile/saudi-arabia/ (last visited Aug. 26, 2026). Plaintiffs also specifically address the right to privacy in Saudi Arabia and state that while there is a Personal Data Protection Law in that country, that law does not provide any protection for information about an individual's sexual orientation.

In contrast, California's strong public policy supporting gay rights and gay marriage, and prohibiting discrimination based upon sexual orientation, is reflected in the California Constitution, numerous California statutes, and decisions by the California Supreme Court. *See, e.g.*, California Constitution, Article 1, sections 1, 7, 7.5 (inalienable rights of privacy, due process and equal protection; marriage as a fundamental right); *In re Marriage Cases*, 43 Cal. 4th 757, 781 (2008) (holding that privacy, equal protection and due process provisions of the California Constitution required that designation of "marriage" be available to same-sex as well as opposite-sex couples,

and that statutory language purporting to limit marriage to a "man and a woman" was unconstitutional), *superseded by constitutional amendment known colloquially as Proposition 8*); *Strauss v. Horton*, 46 Cal.4th 364, 387-88 (2009) (holding that Proposition 8 had effect only of precluding use of designation "marriage" to union of same-sex couples and "le[ft] undisturbed all of the other extremely significant substantive aspects of a same-sex couple's state constitutional right to establish an officially recognized and protected family relationship and the guarantee of equal protection of the laws"), *abrogated by Obergefell v. Hodges*, 576 U.S. 644 (2015)); California Civil Code, § 51 (Unruh Civil Rights Act, prohibiting, *inter alia*, discrimination on the basis of sexual orientation); California Government Code, §§ 12920-12966 (Fair Employment and Housing Act, prohibiting discrimination on the basis of sexual orientation as contrary to California public policy). Similarly, California has a strong public policy in favor of protecting privacy. *See, e.g.*, California Constitution, Article 1, Section 1 (privacy as an inalienable right); *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95, 125-26 (2006) (in choice of law analysis, discussing privacy protections set forth in California Constitution and California statutes and concluding that "California must be viewed as having a strong and continuing interest in the full and vigorous application of [California law] prohibiting the recording of telephone conversations without the knowledge or consent of *all* parties to the conversation) (emphasis in original); *White v. Davis*, 13 Cal. 3d 757, 773-75 (1975) (discussing origins and purpose of addition of "privacy" as an inalienable right included by constitutional amendment in Article 1, Section 1 of the California Constitution.).

At the second step of the analysis, Lufthansa contends that there is a true conflict because Saudi Arabia has an interest in the application of its law to an incident that occurred in its country, and at the time of the incident, Doe was a Saudi Arabian citizen and permanent resident and Roe was and remains a permanent resident of Saudi Arabia. Lufthansa also argues that Saudi Arabia has an interest in "the enforcement of its own criminal laws and norms within the borders of its own sovereign state." Dkt. No. 85 at 3.

Plaintiffs argue that Saudi Arabia does not have a legitimate interest in the application of its law for a variety of reasons, but that even if there is a true conflict, there is a narrow "public policy exception" to the comity doctrine that applies here. That exception "precludes application of a

foreign state's law where to do so would violate California's public policy," and "is so offensive to our public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens . . . ." *Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 135-36 (1985) (internal citation and quotation marks omitted).

The Court concludes that for the reasons articulated by the parties, the laws of Saudi Arabia and California differ. The Court also concludes that, assuming Saudi Arabia has a legitimate interest in the application of its laws, this case fits within the narrow public policy exception to the comity doctrine as set forth in *Wong v. Tenneco*, and that Lufthansa – as the proponent of Saudi law – has not met its burden to show that Saudi law should apply. The application of Saudi Arabian law would violate California's strong public policies supporting gay rights and prohibiting discrimination based on sexual orientation, and would violate California's strong public policy recognizing the right to privacy. Accordingly, the Court will apply California law to this case.

**IV. Failure to State a Claim**

**A. Public Disclosure of Private Facts**

"[T]he public disclosure tort contains the following elements: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Diaz v. Oakland Trib., Inc.*, 139 Cal. App. 3d 118, 126 (1983).

The FAC alleges that plaintiffs went to great lengths to keep their relationship and marriage private, that they disclosed their marriage to Jamshed for the limited and necessary purpose of demonstrating compliance with U.S. immigration requirements, that Jamshed loudly disclosed their marriage in a crowded airport and that Lufthansa disclosed their relationship to the Saudi government. FAC ¶¶ 79-84.

Lufthansa first argues that plaintiffs have failed to state a claim because they do not allege a "public" disclosure. The amended complaint alleges that "Lufthansa made a public, unlawful announcement regarding Plaintiffs' relationship, marital status, and sexual orientation in front of dozens in a crowded airport." *Id.* ¶ 81. The Court finds that this allegation is sufficient to allege a "public" disclosure. *See Kinsey v. Macur*, 107 Cal. App. 3d 265, 271-72 (1980) (affirming judgment

in plaintiff's favor after bench trial based on disclosure to "twenty people at most").

Lufthansa also argues that plaintiffs fail to state a claim because plaintiffs' marriage is a matter of public record in California. Citing *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469 (1975), Lufthansa argues that "the First Amendment precludes recovery for the disclosure of facts that are a matter of public record." Mtn. at 20. In that case, the Supreme Court held that a journalist could not be held civilly liable for publishing the name of a deceased sexual assault victim obtained from publicly available court records. *Id*. at 496-97. As other courts have noted, "[t]he central reasoning of *Cox Broadcasting* was that '[p]ublic records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media.'" *Brooks v. Thompson Reuters Corp*., Case No. 21-cv-01418-EMC, 2021 WL 3621837, at *9 (N.D. Cal. Aug. 16, 2021) (quoting *Cox*, 420 U.S. at 495). None of the concerns animating *Cox* are at issue here, as Jamshed is not a journalist, he did not learn of plaintiffs' marriage from public records, and the alleged disclosure here did not provide a "public benefit." *Cf. U.S. Dep't of Defense v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form.").

Finally, Lufthansa asserts that plaintiffs fail to allege that the disclosure was offensive and objectionable to the reasonable person because plaintiffs allege that Roe was required to disclose his marital status to Lufthansa and "customs authorities" in order to board the flight to the United States. However, the FAC does not allege that Roe was required to disclose his marital status to customs authorities, but rather that plaintiffs were required to disclose their marital status to Lufthansa for "confirmation of Doe and Roe's marital status for U.S. immigration entry requirements[.]" FAC ¶ 27. Further, plaintiffs allege that Roe "[d]iscreetly and quietly" told Jamshed that plaintiffs were married and that Jamshed reacted in a "hostile" manner and loudly and repeatedly disclosed plaintiffs' marital status, including that he "loudly continued to publicly demean and question Plaintiffs about their relationship solely because they were gay." *Id.* ¶¶ 31-33. Plaintiffs also allege on information and belief that "Lufthansa actually gave Plaintiffs' private facts to the Saudi Arabian government notwithstanding Lufthansa's knowledge of the likely

consequences." *Id*. ¶ 81. These allegations are sufficient as a pleading matter, and whether Lufthansa and Jamshed's conduct was offensive and objectionable to the reasonable person is a question of fact. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (where plaintiffs "have identified sufficient facts to survive a motion to dismiss" "[t]he ultimate question of whether [the defendant's actions] could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

**B. Intentional Infliction of Emotional Distress**

Under California law, "the elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen v. Sup. Ct.*, 54 Cal. 3d 868, 903 (1991) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209-10 (1982)).

The FAC alleges that Jamshed and Lufthansa engaged in extreme and outrageous conduct by disclosing plaintiffs' relationship and marriage and that "Lufthansa was aware that disclosing Plaintiffs' personal information and failure to secure the same in Saudi Arabia would cause Plaintiffs severe hardship and, in particular, would put Roe at significant risk of harm by the Saudi government and create severe emotional distress, which in fact has occurred, proximately and directly causing Roe's severe and life-threatening injuries." FAC ¶ 88.

Lufthansa argues that plaintiffs have failed to state a claim for intentional infliction of emotional distress ("IIED") because the challenged conduct was not "so extreme as to exceed all bounds of that usually tolerated in a civilized society," and instead consists of non-actionable "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1988). The Court finds that as a pleading matter, plaintiffs have alleged that Lufthansa, through Jamshed, engaged in extreme and outrageous conduct, and that whether defendant's "conduct has been sufficiently extreme and outrageous to result in liability" is

a question of fact. *Cross v. Bonded Adjustment Bureau*, 48 Cal. App. 4th 266, 283 (1996).

Lufthansa also argues that because plaintiffs' marital status is a matter of public record and plaintiffs have alleged that their marital status was directly relevant to their ability to travel to the United States in the midst of COVID-19 travel restrictions, the alleged outrageous conduct is based on constitutionally protected speech. However, for the reasons discussed above, the Court finds these arguments lack merit.

### C. Breach of Contract

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

The FAC alleges that in order to access Lufthansa's website and purchase airline tickets online, a customer is required to click to "accept all terms and conditions," that those terms and conditions include Lufthansa's privacy policy and "data protection and information" page which "states that it will comply with the GDPR and German's similar data protection regime, the BDSG," and that the terms and conditions are "binding and enforceable as part of Doe and Roe's contract with Lufthansa to provide commercial air services from Riyadh to San Francisco." FAC ¶¶ 92, 94. Plaintiffs also allege that "[i]n its terms and conditions which Lufthansa expressly incorporated in its contracts with the Plaintiffs, Lufthansa promised that it would only process data necessary for the performance of its contract with a customer, including in 'managing check-in processes from check-in invitation, through the entry documents check[.]'" and that "[u]nder Article 9 of the GDPR, information regarding a person's sexual orientation is considered particularly sensitive and additional precautions should have been taken to limit collection and avoid disclosure of this information." *Id.* ¶ 94. Plaintiffs further allege that "Lufthansa's privacy policy also promises that any transmitted information shall be done securely" and that "Lufthansa and its agent's conduct in disclosing Roe and Doe's sexual orientation publicly and loudly in the Riyadh airport and sending potential unsecure or unauthorized electronic transmissions to the same effect is a breach of

Lufthansa's contract with Roe and Doe." *Id*. ¶¶ 95, 97.

Lufthansa contends that the breach of contract claim should be dismissed because the FAC does not quote verbatim the terms of the contract nor did plaintiffs attach a copy of the written contract to the FAC. Lufthansa cites solely California cases for that proposition, and the Court finds that as a federal pleading matter the FAC sufficiently alleges the elements of a breach of contract. Lufthansa also argues that its "data protection and information" page is not part of its contract with plaintiffs, and that even if that page is part of the contract, Lufthansa did not breach that policy. These are factual arguments that cannot be resolved on a motion to dismiss.

Lufthansa's supplemental submission regarding choice of law raises a new argument regarding plaintiffs' breach of contract claim. Lufthansa cites two cases for the proposition that "the GDPR does not afford protection to someone who is not a citizen of the European Union." Dkt. No. 85 at 4. Both cases are distinguishable. In *Smith v. Sox*, No. 2:23-cv-68-JES-NPM, 2023 WL 4157362 (M.D. Fla. June 23, 2023), a self-represented plaintiff sued her former employer, the Boston Red Sox, after she was terminated based on her refusal to be vaccinated against COVID-19. One of her claims related to a workplace survey that she responded to prior to her termination, and she alleged that the Boston Red Sox had "manipulated the computer server to insert data making the surveys inconsistent, and that the refusal to correct data upon request constitutes a violation of 'The General Data Protection Regulations, and Privacy Laws.'" *Id*. at *2. The district court evaluated those allegations when it concluded that the GDPR did not apply, and indeed there is no indication in that opinion that there was any connection whatsoever between Smith's employment with the Boston Red Sox and the GDPR. The second case cited by Lufthansa, *Cooper v. International Business Machines Corp*., No. 3:24-cv-656 (VAB), 2024 WL 5010488 (D. Conn. Dec. 6, 2024), involved a self-represented plaintiff who had worked for IBM UK and IBM US, and he brought claims under ERISA and the GDPR regarding his pension. The district court found that Cooper could not bring a claim under the GDPR because neither Cooper nor IBM UK (or IBM US) were European Union parties, and the court noted that the UK had left the European Union in January 2020. *Id*. at *8.

Here, plaintiffs do not bring a claim directly under the GDPR. Instead, plaintiffs claim that

Lufthansa, which "is a data processor subject to the privacy and data protection regulations in the European Union's GDPR," expressly represented that it would comply with the GDPR in the performance of its contract with plaintiffs. FAC ¶¶ 93-94. Thus, unlike the cases relied upon by Lufthansa, here one of the parties is a citizen of the European Union, and that party allegedly expressly incorporated the GDPR into the parties' contract.

**D. Negligent Infliction of Emotional Distress**

The parties agree that negligent infliction of emotional distress is not an independent tort in California, but is a subset of negligence. *See Burgess v. Sup. Ct.*, 2 Cal. 4th 1064, 1072 (1992). As such, "[t]he traditional elements of duty, breach of duty, causation, and damages apply." *Id.*

The FAC alleges that Lufthansa had a duty to avoid discriminating against its customers, that Lufthansa "breached that duty by not sufficiently monitoring, supervising, training and educating its employees concerning the sensitivity of private and confidential information and the probable impact on those victimized by failure to adhere to those standards; and Lufthansa further breached its duty" through Jamshed's conduct and the disclosure of plaintiffs' relationship; and that the disclosure injured plaintiffs in various ways. FAC ¶¶ 99-101.

Lufthansa contends that plaintiffs have failed to adequately allege that it breached any duty, and that "to the extent Plaintiffs are attempting to hold Lufthansa to duties imposed by contract, these duties are not sufficiently alleged." Mtn. at 23. The Court finds that the FAC sufficiently alleges that Lufthansa owed plaintiff a duty and as discussed above, the Court finds that plaintiffs have stated a claim for breach of contract.

**E. Loss of Consortium**

A cause of action for loss of consortium has four elements: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." *LeFiell Manufacturing Co. v. Sup. Ct*., 55 Cal. 4th 275, 284 (2012) (internal citation and quotation marks omitted).

Lufthansa argues that aside from the fact of their marriage, plaintiffs have failed to allege facts satisfying the other elements of this claim. Lufthansa asserts that plaintiffs "have not alleged a bodily injury to either spouse" and that "a loss of consortium claim cannot be premised upon solely psychological injuries to the nonplaintiff spouse." Mtn. at 24. Lufthansa also contends that plaintiffs have not alleged a loss of consortium or that Lufthansa caused any such loss, arguing that plaintiffs' decision to live apart is a "personal choice." *Id*.

The Court finds that plaintiffs have stated a claim for loss of consortium. To the extent Lufthansa suggests that bodily injury is always required to bring a claim for loss of consortium, this is incorrect. *See Molien v. Kaiser Found. Hosps*., 27 Cal. 3d 916, 932 (1980) (holding loss of consortium could be based on solely mental injuries because "it is irrefutable that certain psychological injuries can be no less severe and debilitating than physical injuries" and "the impairment of one spouse's mental health could well deprive the other of the 'companionship and moral support that marriage provides no less than its sexual side.'"). In any event, the FAC also alleges that Roe has developed a terminal illness, pulmonary fibrosis, that was "directly and proximately caused by the enormous stress suffered by Roe" as a result of Lufthansa's disclosure of plaintiffs' marital status to Saudi Arabia and the fact that Roe cannot go back to Saudi Arabia for fear of being prosecuted. FAC ¶¶ 2, 7, 75. Plaintiffs also allege that because they are forced to live apart for much of the year they are deprived of each other's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and/or enjoyment of sexual relations. *Id.* ¶ 104. These allegations are sufficient to allege tortious injury, loss of consortium, and causation.

## CONCLUSION

For the foregoing reasons, the Court DENIES Lufthansa's motion to dismiss and/or strike.

**IT IS SO ORDERED**.

Dated: August 28, 2026

SUSAN ILLSTON
United States District Judge